FILED 11 APR 21 15:50USDC-ORE

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

ROBERT A. KOLWITZ and NANCY KOLWITZ,

        Plaintiffs,

v.

LINCOLN COUNTY OREGON,

        Defendants.

10-6002-TC

FINDINGS AND RECOMMENDATION

COFFIN, Magistrate Judge:

The Kolwitzs filed this action alleging a 42 U.S.C. § 1983 claim for false arrest, unreasonable seizure, and equal protection and due process violations as well as state law claims for defamation, false light, and interference with economic relationships. On March 2, 2011, Lincoln County moved for summary judgment on all of the Kolwitzs' claims. I heard oral argument on April 20, 2011, and for reasons discussed below, recommend that this court grant the motion.

///

///

Page 1 - FINDINGS AND RECOMMENDATION

## Background

This action stems from Lincoln County Sheriff's deputies arrest of Robert Kolwitz (Kolwitz) on January 5, 2009. The circumstances leading up to and surrounding the arrest are as follows.

Kolwitz and his wife Nancy own a building and executed a commercial lease with James Nordell and Nordell's company Oregon Shores Vacation Rentals, Inc. to lease space in the building. As well as being the Kolwitzs' tenant, Nordell was also their employer–both Kolwitzs were employed by Ocean Shores Vacation Rentals, Inc., and Kolwitz also worked for Nordell's construction company. In late 2008, the relationship between the Kolwitzs and Nordell soured. Kolwitz claimed that Nordell owed him back wages and was behind on rent. As of January 1, 2009, Nordell was one month behind on the rent.

On the night of January 3, 2009, Kolwitz changed the locks on the building in an attempt to evict Nordell. Kolwitz did not mention the lock-out-eviction to Nordell because he wanted to avoid a confrontation. Kolwitz believed that, because Nordell had not paid rent for December 2008, any items Nordell had left in the building as of December 1, 2008 belonged to Kolwitz. The next morning–January 4, 2009, Kolwitz returned to the building to remove items Nordell had left behind (which Kolwitz apparently assumed were his now) and to disconnect the internet and computer server. The server was located outside the building.

While Kolwitz was outside removing the server, Nordell arrived in his car (apparently having received notification of the lock-out-eviction from a locked out staff member). When Nordell arrived, the confrontation Kolwitz had sought to avoid happened. Nordell hit Kolwitz's leg with his car and, after stopping the car and getting out, started yelling at him. Kolwitz called 911. Lincoln County deputies, including Deputy Hawley arrived on the scene. Seeing that Kolwitz was limping,

Page 2 - FINDINGS AND RECOMMENDATION

Deputy Hawley arranged for Kolwitz to leave the scene in an ambulance. Some time later, when Kolwitz was leaving the emergency room, Deputy Hawley called to let Kolwitz know he planned to allow Nordell into the building the next day. Both Kolwitzs received voicemails that day from Nordell stated that each was terminated. On January 12, 2009, Kolwitz received a letter from Nordell dated January 1, 2009 stating that Kolwitz was terminated immediately.

The next day, after Nordell was let into the building, he called Deputy Lance Cummings to report that five Gateway computer towers, one Dell computer tower, a Fuji Film digital camera and a camera tripod were missing from his business which was located in the building. Nordell also related that his business phone lines had been disconnected from the wall inside his business and the internet connector to the computer server had been stripped out, shutting down the server. After speaking with Nordell, Deputy Cummings called Kolwitz to tell him that Nordell's equipment was missing from the building. Kolwitz admitted that he had taken the property. Deputy Cummings asked Kolwitz to bring the property back to the Sheriff's office. Kolwitz agreed to meet with Deputy Cummings to return the property.

When Kolwitz met with Deputy Cummings, he refused to return the property. In fact, Kolwitz told another deputy that his lawyer had advised him not to return the property to Nordell or to the Sheriff's office because the property was "the only leverage" Kolwitz had. Deputy Cummings arrested Kolwitz for Burglary II and Theft I and lodged him in the county jail.

After arresting Kolwitz, Deputy Cummings located Nancy Kolwitz's car in the Lincoln County Courthouse parking lot. He could see at least three computer towers and a camera tripod matching the description of Nordell's property in the back seat. Shortly after Deputy Cummings located the vehicle, Nancy Kolwitz exited the Courthouse and approached her car. She told Deputy

Page 3 - FINDINGS AND RECOMMENDATION

Cummings she intended to return home in her car. Deputy Cummings explained that the car contained stolen property that he needed to recover and that she could not leave until he had removed the property. Nancy Kolwitz told Deputy Cummings to get a search warrant. Thus, Deputy Cummings seized the car and had it towed to the evidence room at the Lincoln County Jail. A search warrant issued to search the car for Nordell's property on January 6, 2009.

As part of Deputy Cummings's job duties, he wrote a news release memorandum detailing Kolwitz's January 5, 2009 arrest. The memorandum detailed Kolwitz's arrest charge and the items found in Nancy Kolwitz's car. In accordance with his job duties, Deputy Cummings submitted the memorandum to a supervising sergeant, who released it to news media. On January 9, 2009, the Newport News Times published a paragraph about Kolwitz's arrest.

The Kolwitzs subsequently filed this action against defendant Lincoln County.

## **Legal Standard**

Federal Rule of Civil Procedure 56 allows the granting of summary judgment:

> if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c). There must be no genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

The movant has the initial burden of establishing that no genuine issue of material fact exists or that a material fact essential to the nonmovant's claim is missing. Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986). Once the movant has met its burden, the burden shifts to the nonmovant to produce specific evidence to establish a genuine issue of material fact or to establish the existence of all facts material to the claim. Id.; see also, Bhan v. NME Hosp., Inc., 929 F.2d 1404, 1409 (9th

Page 4 - FINDINGS AND RECOMMENDATION

Cir. 1991); Nissan Fire & Marine Ins. Co., Ltd., v. Fritz Cos., Inc., 210 F.3d 1099, 1105 (9th Cir. 2000). In order to meet this burden, the nonmovant "may not rely merely on allegations or denials in its own pleading," but must instead "set out specific facts showing a genuine issue of fact for trial." Fed. R. Civ. P. 56(e).

Material facts which preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case. Anderson, 477 U.S. at 248. Factual disputes are genuine if they "properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. On the other hand, if, after the court has drawn all reasonable inferences in favor of the nonmovant, "the evidence is merely colorable, or is not significantly probative," summary judgment may be granted. Id.

## Discussion

A.  **42 U.S.C. § 1983 Claim**

To succeed on a § 1983 claim against a municipality, a plaintiff must show: (1) that he or she suffered a constitutional depravation and (2) that the municipality's official policy, custom or usage caused the deprivation. Monell v. New York Dep't of Social Services, 436 U.S. 658, 690-91 (1978). Municipal liability may also attach if the deliberate decision of an official responsible for establishing final policy caused the alleged constitutional depravation. Pembaur v. City of Cincinnati, 475 U.S. 469, 483-84 (1986) "The 'official policy' requirement was intended to distinguish the acts of a municipality from the acts of the employees of the municipality and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible. Id. at 479 (emphasis in original).

///

Page 5 - FINDINGS AND RECOMMENDATION

The Kolwitzs' complaint does not allege a violation of their rights stemming from a municipal policy, practice or custom or a decision maker with final authority. Instead, liability is based only on the conduct of individual Lincoln County deputies. Consequently, the Kolwitzs have not alleged facts sufficient to support a § 1983 claim against defendant Lincoln County. Further, as Lincoln County points out, the applicable statute of limitations precludes amendment of the complaint to name individual defendants.

The Kolwitzs' argument that, under the terms of the commercial lease, Nordell was wrong in his complaint to the Lincoln City Sheriff's office which resulted in Kolwitz's arrest is not germane to the merits of the Monell claims (the Kolwitzs have not filed a claim against any individual deputy). I observe, however, that the Kolwitzs' argument that the lease entitled Kolwitz to lock out Nordell without written notice and further entitled him to ownership of all the property that Nordell had in the building is an untenable distortion of the express language of the lease. (dkt. #31-1, ex 1 at 9,10 (Commercial Lease § 14.1 & 15.2)). In short, a landlord cannot lock out a tenant with no advance notice, thereby depriving a tenant of access to the premises and ability to retrieve his personal property, and then claim that the tenant abandoned the property with ownership thereof passing to the landlord.

The Kolwitzs further argue that I may draw a reasonable inference that it is Lincoln County's policy, practice or custom to publish the facts of arrest or incarceration to third parties–specifically the media, regardless of ongoing investigations. Thus, according to the Kolwitzs, Lincoln County's practice resulted in the publication of "completely false information" about Kolwitz. Even if this allegation were true, it would not support a finding that this practice, policy or custom lead to an unlawful search, seizure, or arrest.

Page 6 - FINDINGS AND RECOMMENDATION

B. **Defamation and False Light Claims**

Under Oregon law, statements made by state and executive public officials, both in the inferior and the superior ranks, are absolutely privileged if published in performance of their official duties. Chamberlain v. City of Portland, 184 Or. App. 487 (2002); Schliske v. City of Albany Police Dep't, 617 F.Supp.2d 1106 (D.Or. 2009). Here, the undisputed facts establish that the statements made by Deputy Cummings regarding Kolwitz's arrest were part of his official duties–he was required and authorized to write the memorandum regarding Kolwitz's arrest. Shearer v. Lambert, 274 Or. 449, 454 (1976). I am not persuaded by the Kolwitzs' assertion that absolute privilege does not apply because Lincoln County should have reviewed the commercial lease and consulted county counsel for any interpretation questions. The commercial lease cannot shed any light on the official duties of Sheriff's deputies. I find the statements made to the media are privileged.

Even if this were not the case, the Kolwitzs' defamation would fail as a matter of law. Oregon law requires that a party bringing a defamation claim present sufficient evidence to establish that the defendant published a defamatory statement about the plaintiff to a third person. Wallulis v. Dymowski, 323 Or. 337, 342 (1996). A defamatory statement is one that would subject another to hatred, contempt or ridicule or would somehow diminish another's standing in the community. Marleau v. Truck Ins. Exhange, 333 Or. 82, 94 (2001). Unless the statement constitutes defamation per se[1], a plaintiff must allege that the statement is false. Id.; see also, Schliske, 617 F.Supp. at 114. Here, the Kolowitzs have not alleged that the information in the press release was false.

---

[1] In other words, the mere utterance of the statement is sufficient to defame someone. Historic examples of statements that are defamatory per se include statements that impute an inability or unfitness to perform the duties of one's employment, accusations that one has committed a crime, or assertions of unchastity (generally in a woman), or of having a loathsome disease.

Page 7 - FINDINGS AND RECOMMENDATION

Accordingly, their defamation claim fails as a matter of law.

Likewise, the Kolwitzs' false light claim fails as a matter of law. A plaintiff asserting a false light claim must prove that: (1) the defendant placed him in a false light before the public; (2) the false light in which he was placed would be highly offensive to a reasonable person; and (3) the defendant had knowledge of or acted with reckless disregard as to the falsity of the publicized matter and the false light in whictht the plaintiff would be placed. Restatement (Second) of Torts §625E (1977). Oregon courts have interpreted the third requirement to mean that a plaintiff must prove actual malice. McNabb v. Oregonian Publishing Co., 69 Or. App. 136, 143 (1984). Malice may not be inferred; the plaintiff must provide sufficient facts to establish that the defendant had knowledge of or acted in reckless disregard as to the falsity of the statement. Id. at 143.

Here, there is no evidence in the record that the information contained in the news release was false or that Lincoln County acted with malice toward the Kolwitzs. Accordingly, I find that the Kolwitzs' false light claim fails as a matter of law.

## C.  **Interference with Economic Relations**

The Kolwitzs claim that Lincoln County improperly interfered with their economic relationships and caused them to be terminated from their employment. To prove a claim of intentional interference with economic relationships, the Kolwitzs must establish that a third party intentionally interfered with their existing professional or business relationships; that the interference caused harm; and that they suffered damages as a result. Allen v. Hall, 328 Or. 276, 281 (1999).

The Kolwitzs cannot establish that they had any existing professional or business relationships aside from the one with Nordell and they cannot establish that Lincoln County' actions actually interfered with any such relationships. The Kolwitzs' claim that Nordell terminated them

Page 8 - FINDINGS AND RECOMMENDATION

due to the arrest is belied by the record. It is clear that their relationship with Nordell was damaged before the arrest–Nordell had already terminated them both and hit Kolwitz with his car. Indeed, it is hard to see how Lincoln County could have done anything to make the relationship worse. The Kolwitzs concede that they have held subsequent employment and that no one has told them they were not hired due to the arrest. Moreover, Kolwitz testified at deposition that any harm to his reputation could be due to the several fraud lawsuits pending against him in Lincoln County. In short, the Kolwitzs have not raised any triable issue of fact with regard to their intentional interference with economic relationships claim.

Although the Kolwitzs allege their termination stemmed from Kolwitz's arrest, the record is clear that the relationship with Nordell had been previously damaged. Nordell terminated both the Kolwitzs before the arrest and hit Kolwitz with his car. Moreover, the Kolwitzs have not established that Lincoln County's actions actually interfered with any business or professional relationships.

## Conclusion

I recommend that the court grant Lincoln County's motion for summary judgement (dkt. #20) and dismiss the Kolwitz's claims with prejudice.

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due no later than fourteen days after the date this order is filed. The parties are advised that the failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991). If no objections are filed, review of the Findings and Recommendation will go under advisement on that date. If objections are filed, any party may file a response within fourteen days after the date the

objections are filed. Review of the Findings and Recommendation will go under advisement when the response is due or filed, whichever date is earlier.

DATED this 21st day of April 2011.

THOMAS M. COFFIN
United States Magistrate Judge